**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:13-CR-58 |
| | ) | |
| ANTONIO DUPREE COLLINS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion to Suppress Confession of Defendant, filed by Antonio Dupree Collins on June 11, 2013 (DE 14).  For the reasons set forth below, the motion is **DENIED**.


BACKGROUND

Defendant, Antonio Dupree Collins ("Collins"), was charged in a one count indictment with being a felon in possession of a firearm. Collins now moves this Court to suppress the confession he made subsequent to his arrest.  According to the motion, Collins requested an attorney immediately upon his arrest, and the confession must be suppressed because the right to counsel was invoked before the confession was elicited.  The Government filed a response on June 18, 2013, urging this Court to deny the instant motion both because he did not invoke his right to counsel and because he was not being interrogated at the time Collins claims to have invoked his right to counsel.

A hearing took place on June 21, 2013, at which Officer Lane

Schmidt, Officer Shane Coleman, Detective Joseph Cooper and Collins testified. Each side had the opportunity to submit evidence, and the Court heard argument from both the Government and Collins. At the conclusion of the hearing, the Court took the motion under advisement. In making the following findings of fact, the Court considered all evidence presented and the credibility of the witnesses.

FINDINGS OF FACT[1]

Collins' home was under surveillance on April 3, 2013, and officers of the Merrillville Police Department ("MPD") intended to execute a search warrant on the home that day. Collins was seen leaving his home in his vehicle, and he was subsequently pulled over and arrested around five or six in the evening. At the time of his arrest, Collins did not ask for counsel.[2] All three officers that testified at the hearing reported that they do not recall Collins saying anything during his arrest. Furthermore, Collins was not interrogated at the time of his arrest. Collins was transported to the MPD by Officers Schmidt and Coleman and was not interrogated during his transport to MPD. Upon arrival at the MPD, Collins was placed in a holding cell.

---

[1]An official transcript of the hearing on the instant motion to suppress has not been prepared. This Court has reviewed a rough draft of the hearing transcript but, due to the lack of an official transcript, cannot provide citations to the hearing testimony relied on in this order.

[2]Although the instant motion asserted that Collins requested an attorney immediately upon his arrest, no witness (including Collins himself) testified that Collins requested an attorney at that time.

Following Collins' arrest, Detective Cooper participated in the execution of the search warrant for Collins' home. Then, around 8:00 p.m., Detective Cooper returned to the MPD to interrogate Collins. Detective Cooper took Collins from the holding cell to an interview room, and from that point on his interactions with Collins were recorded. Collins testified that he made no statements to anyone prior to being taken to the interrogation room by Detective Cooper. Detective Cooper read Collins his *Miranda* rights, asked him if he understood those rights, and asked him to sign an advice of rights form.[3] The form includes the following:

> You have the right to remain silent.
>
> Anything you say can and will be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.
>
> If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

Collins signed the waiver form. The form stated that he had read the statement, understood his rights, and was willing to make a statement and answer questions without a lawyer. Collins asserts that he did not really read the form; he just "looked up over it" and hurried and signed it.

---

[3] The Court did not view the video recording. The recording was not introduced into evidence for reasons that will be explained later in this order. This factual finding is based on the stipulation of defense counsel that the content of the video recording is as government counsel has represented.

According to Detective Cooper, Collins did not express a need or desire for an attorney at any time before or after signing the advice of rights form.  In contrast, Collins asserts that, although he had made no statements to anyone before being taken to the interrogation room, once in the room he asked Detective Cooper if he needed his lawyer, and Detective Cooper indicated that he did not need his lawyer because he just wanted to ask him a couple of questions.

Detective Cooper testified that, following the signing of the waiver, Collins confessed to possessing marijuana and weapons. Collins, on the other hand, testified that he "did not admit to nothing" in his statement to Detective Cooper.

At the time of Collins' arrest, Detective Cooper was familiar with Collins from a previous case in which Detective Cooper was the charging officer.  Detective Cooper was also aware that Collins was represented by counsel in that previous action.  More specifically, Detective Cooper was aware that Collins was represented by his current counsel, Patrick Young.

The Government indicated that the video recording of the interrogation would show that Collins never asked for an attorney and, as mentioned previously, was read his rights.  The Government opted not to introduce the video recording into evidence because counsel for Collins conceded that the video will show what the Government says it shows.  Collins' counsel was rather adamant in his assertion that there was no need to view the video.  Defense counsel then explained his theory that Collins' request for an attorney took place before the video recording was running.  In response, the Government further

indicated that the video was left running following the earlier interview of Collins' girlfriend and continued to run with no stopping until Collins was brought into the interview room and sat down. The Government represented that there was no point in time while Collins was in the interrogation room that the video recording was not running. The Court offered to watch the video repeatedly, but counsel for Defendant indicated that he would stipulate to the contents of the tape as represented by counsel for the Government. Based on that stipulation, counsel for the Government stood by his determination that the video recording need not be admitted into evidence.

CONCLUSIONS OF LAW

Defendant has apparently abandoned the argument set forth initially in his motion to suppress: that Defendant asked for counsel immediately upon his arrest. And rightfully so, as there is no evidence to support that claim. Instead, Defendant now argues that he did indeed ask for counsel, but that his request for counsel is not on the video because the video was started after that request was made.

> [W]hat we're saying is that Detective Cooper and the Merrillville police offiers, they have their finger on the button that controls the video. And as we all know, they turn the video on at the appropriate time when the setting is correct. And what my client has said to me and what I believe to be the truth is that No. 1, he asked for a lawyer. He asked for an attorney and he wasn't given one and at that time the interrogation should have stopped. When he was taken from his cell and taken to the room, at some point during the process, during that walk, the interrogation began. So we know he was in

-5-

custody.  We'll leave that alone.  The question
is was he being interrogated and the answer is
yes.  He was being interrogated when he was taken
in that room, as he was walking in and at some
point when he sat down and Detective Cooper was
talking to him and before the video went on he
said hey, can I have a lawyer?  And no, you don't
need one.  You don't need one.  There is no doubt
that the video is what it says it is and there's
no doubt he signed the advice of rights.

Counsel further argues that the officers knew Collins was not new
to the criminal justice system and that he had been represented by
Attorney Patrick Young in the past.  Defendant argues that, because
of that knowledge, when Collins asked for an attorney, they should
have stopped interrogating him.

The Fifth Amendment of the United States Constitution guarantees
that no person "be compelled in any criminal case to be a witness
against himself, nor be deprived of life, liberty, or property,
without due process of law . . . ."  U.S. CONST. AMEND. V.   The Fifth
Amendment "[p]rotects a person only against being incriminated by his
own compelled testimonial communications." *Doe v. U.S.*, 487 U.S. 201,
207 (1988).  When an individual is taken into custody and is subject
to interrogation, the individual must be advised of these rights.
*Miranda v. Arizona*, 384 U.S. 436 (1966).

*Miranda* provides that statements obtained through custodial
interrogation cannot be utilized at trial unless the use of procedural
safeguards guarantees that the accused has been informed of and has
freely waived the Constitutional privileges of the Fifth Amendment,
including the right to counsel.  *Miranda*, 384 U.S. at 444-45.  The
burden rests with the Government to demonstrate that a defendant

knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Id.* at 475.

If Collins unambiguously invoked his right to counsel, then all questioning should have stopped until counsel was made available or until Collins initiated further communication. *See United States v. Hunter*, 708 F.3d 938, 942 (7th Cir. 2013)(quoting the holding in *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981)). This is an objective inquiry requiring, "at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *United States v. Martin*, 664 F.3d 684, (7th Cir. 2011)(quoting *Davis v. United States*, 512 U.S. 542, 459 (1994)). Any statements would be inadmissible if made following such a request and before counsel was provided or Collins reinitiated communication. The intent behind this requirement is the prevention of police coercion. *Martin*, 664 F.3d at 689.

This Court must determine whether Collins made an unambiguous request for counsel. Collins testified that, while he was in the interrogation room, he asked Detective Cooper "[d]o I need my lawyer or something?" Detective Cooper, however, testified that at no point did Collins request an attorney. This court finds Detective Cooper's testimony regarding whether Collins asked for an attorney more credible than that of Collins. This finding is based on several factors. First, the Court has considered the demeanor of the two witnesses.

Second, the Court has considered several differences between the

Government's assertion regarding the contents of the video recording, which was stipulated to by defense counsel, and Collins' rendition of what occurred. The Government asserts that, consistent with Detective Cooper's testimony, the video shows that Collins was read his rights, but Collins denied this. The Government asserts that, consistent with Detective Cooper's testimony, Collins made a confession, but Collins denied this. The Government suggested through its questioning that the video includes a statement by Collins that he was holding guns for someone named Tone, but Collins denied that. Since defense counsel stipulated to the contents of the video, the Court has no choice but to find Collins' testimony untruthful in these regards.

Additionally, the Court has also considered the fact that it is stipulated that Collins' purported request for an attorney is not included in the video recording of the interrogation, even though Collins testified that the request was made while in the interrogation room. Defense Counsel has attempted to explain the absence of the request for an attorney on the video recording by arguing that the request for an attorney was made before the video started running. The Court has considered that explanation but finds it lacking. Defense counsel stipulated to Government counsel's assertion regarding the contents of the video, including that it contains no request for an attorney and that the video was running when Collins entered the room and remained running throughout the interview. If the video recording was running when Collins entered the interrogation room and continued running throughout the interview, and if Collins made the request for counsel while in the interrogation room, as he has

testified, then the statement would have been recorded. It is stipulated that the statement was not recorded. Defense counsel, seemingly recognizing the logical impossibility of his argument, attempts to avoid the problem by suggesting that the request for an attorney happened during the walk to the interrogation room, but that argument is contrary to Collins' own testimony.

Lastly, the Court has considered the fact that Collins stands to gain from being less than truthful. Detective Cooper does not appear to have any motivation to be dishonest.

Collins' remaining argument is that, because he was not new to the criminal justice and Detective Cooper knew Attorney Patrick Young had represented Collins in a past criminal matter, there was an affirmative obligation to stop questioning Collins. No evidence suggests that Detective Cooper knew whether Attorney Young was able or willing to handle this case for Collins or that Collins could again afford Attorney Young's services. Furthermore, no law is offered in support of this argument, and this Court is aware of no law that requires police to avoid interrogating someone because of knowledge that they have been represented by counsel in the past. This Court will not do the parties research for them. *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999)("It is not the responsibility of this court to make arguments for the parties."). Accordingly, the argument is rejected.

The Government has sustained its burden of demonstrating that

Collins did not clearly invoke his right to counsel.[4] There is simply no evidence of police coercion or wrongdoing in this case. Accordingly, Collins' motion to suppress cannot be granted.

<u>CONCLUSION</u>

For the reasons set forth above, Defendant's Motion to Suppress Confession of Defendant is **DENIED.**

**DATED: July 8, 2013**                    **/s/RUDY LOZANO, Judge**
                                           **United States District Court**

---

[4]Neither the Government nor Defendant have raised the issue of whether Collins' alleged request for an attorney, even if accepted, was sufficiently unambiguous. That is questionable. *See United States v. Buckley*, 4 F.3d 552, 558-59 (7th Cir. 1993)("I don't know if I need an attorney" was deemed ambiguous).